**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

——————————————————————X

ALEXANDER AGUILAR, CARLOS AGUILAR, LEOPOLDO SANTOS CATU, SANTOS CHAJCHAGUIN, MARVIN COTO, ESTEBAN ESPINOZA, WALTER HERNANDEZ, ANGEL MENDOZA, HUGO ORENO, CARLOS PINTO, HECTOR RODAS LOPEZ, and LUIS AMILCAR RODRIGUEZ,

      Plaintiffs,                                     **No. 3:07-cv-0193**

          -against-

IMPERIAL NURSERIES, GRIFFIN LAND & NURSERIES, PRO TREE FORESTRY SERVICES, WILLIAM FORERO, HERNANDO ARANDA, GREGORY M. SCHAAN, JIM WELLS, FREDERICK M. DANZIGER, and ANTHONY J. GALICI,

      Defendants.

——————————————————————X

## FIRST AMENDED COMPLAINT

The twelve named Plaintiffs, citizens of Guatemala, bring this action to recover for damages inflicted by Defendant Imperial Nurseries and its principals, employees, and agents.  Defendants exploited and defrauded Plaintiffs in the spring and early summer of 2006 by recruiting them on false pretenses to work in the United States and effectuating a broad scheme of psychological coercion and threatened abuse of the legal process to keep Plaintiffs in their control.

Plaintiffs had been promised work planting pine trees in North Carolina, and relying on this promise they lawfully obtained H-2B visas and plane tickets to the United States.  Upon arriving in the United States, however, Plaintiffs were transported without

their consent to Connecticut.  In Connecticut, Defendants forced Plaintiffs to work in the

fields of Imperial Nurseries for an average of nearly 80 hours per week, paying them far

below the federal and state minimum wage.  Defendants confiscated Plaintiffs' passports

to prevent their escape; restricted Plaintiffs' travel and communication with the outside

world; deprived Plaintiffs of emergency medical care; made fraudulent claims about their

ability to effectuate Plaintiffs' arrest, imprisonment, and/or deportation by U.S. law

enforcement authorities; and generally perpetrated a campaign of coercion and fraud

designed to keep Plaintiffs intimidated and unable to leave the Imperial fields.  Isolated,

disoriented, unable to speak English, and unfamiliar with their rights under American

law, Plaintiffs were exploited by Defendants and felt powerless to escape.  They now

seek redress before this Court.


## JURISDICTION AND VENUE

1.      The Court has jurisdiction pursuant to 18 U.S.C. §§ 1595 and 1964(c); 28 U.S.C.

§§ 1331, 1332, 1337(a), and 1350; and 29 U.S.C. §§ 216(b) and 1854.   This Court also

has supplemental jurisdiction over Plaintiffs' state and Guatemalan law claims pursuant

to 28 U.S.C. § 1367.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the

events giving rise to this action occurred within this district, and Defendants are located,

reside, or do business in this district.  Venue is also proper pursuant to 28 U.S.C. §

1391(c), as Defendants Pro Tree Forestry Services, LLC, Imperial Nurseries, Inc., and

Griffin Land and Nurseries, Inc., are subject to personal jurisdiction in the state of

Connecticut.  Venue is also proper pursuant to 18 U.S.C. § 1965.

<u>PARTIES</u>

3.      Plaintiffs Alexander Aguilar, Carlos Aguilar, Leopoldo Santos Catu, Santos
Chajchaguin, Marvin Coto, Esteban Espinoza, Walter Hernandez, Angel Mendoza, Hugo
Oreno, Carlos Pinto, Hector Rodas Lopez, and Luis Amilcar Rodriguez are citizens of
Guatemala.  Plaintiffs entered the United States lawfully in March and April 2006 on H-
2B visas to perform labor.

4.      Defendant Pro Tree Forestry Services, LLC (hereinafter "Pro Tree") is a labor
contractor organized under the laws of the State of North Carolina.  Its principal place of
business is in Tallahassee, Florida.

5.      Pro Tree has registered in Connecticut as a Foreign Limited Liability Company
since at least 1999.

6.      Defendant William Forero is the owner, operator, member, and manager of Pro
Tree.  Forero is an individual separate and distinct from Pro Tree.

7.      Defendant Hernando Aranda is an agent and employee of Pro Tree.

8.      Defendant Imperial Nurseries, Inc. (hereinafter "Imperial Nurseries" or
"Imperial"), is a commercial nursery incorporated under the laws of the State of
Delaware.  It has operations in at least Florida and Connecticut.  Its principal place of
business in Connecticut is 90 Salmon Brook Street in Granby, Connecticut.

9.      Imperial Nurseries is a grower, retailer, and wholesale distributor of landscape
nursery stock, specializing in container-grown plants.  Imperial's sales volume places it
among the twenty largest landscape nursery growers in the country.

10.     Defendant Gregory M. Schaan is President and Chief Executive Officer of
Imperial Nurseries.

11.     Defendant Jim Wells is a manager, supervisor, and employee of Imperial Nurseries.

12.     Defendant Griffin Land & Nurseries, Inc. (hereinafter "Griffin Land" or "Griffin"), is a large real estate and landscape nursery business incorporated under the laws of the State of Delaware.  Griffin Land's principal place of business is One Rockefeller Plaza, New York, NY, 10020.

13.     Defendant Frederick M. Danziger is President and Chief Executive Officer of Griffin Land and a director of Imperial Nurseries.

14.     Defendant Anthony J. Galici is Vice President, Chief Financial Officer, and Secretary of Defendant Griffin Land.  Galici was also Senior Vice President of Imperial Nurseries at all times relevant to this action.

15.     Imperial Nurseries is a wholly-owned subsidiary of Griffin Land.

16.     Imperial Nurseries and Griffin Land operate as an integrated enterprise. Defendants Imperial Nurseries and Griffin Land exhibit common ownership and financial control of operations.

17.     The property in Granby, Connecticut, on which Imperial Nurseries operates, is owned by Griffin Land.

18.     Defendants Imperial Nurseries and Griffin Land also have common management. The Chairperson of Griffin Land, Frederick Danziger, is also a director of Imperial Nurseries, and Anthony Galici was formerly the Senior Vice-President of both Imperial Nurseries and Griffin Land.

19.     At all times relevant to this action, Defendant Pro Tree was acting as an agent for Imperial Nurseries to recruit, manage, and oversee foreign laborers employed in Imperial Nurseries' fields.

20.     At all times relevant to this action, each of the above-named Defendants was an employer of each Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801 *et seq.*, and the Connecticut Wage and Hour Law, Conn. Gen. Stat. §§ 31-58 *et seq.*

21.     Pro Tree, Imperial Nurseries, and Griffin Land all engage in interstate commerce through the production, distribution, and sale of their products in a multi-state area.

<u>STATEMENT OF FACTS</u>

<u>Fraudulent Application for H-2B Visas</u>

22.     The ability of Imperial Nurseries and Griffin Land to obtain cheap labor is essential to their profitability.  As Griffin Land stated in a 2006 U.S. Securities and Exchange Commission filing:

> Labor costs comprise a substantial portion of Imperial's production costs. . . .  As a significant amount of Imperial's seasonal employees are paid at slightly above minimum wage rates, any increases in such minimum wage rates could adversely impact Imperial's results.  In addition, Imperial depends on a significant amount of seasonal labor, particularly during its peak shipping period in the spring.  The lack of the ability to procure such seasonal labor could adversely affect Imperial's operations.

Griffin Land & Nurseries, Annual Report (Form 10-K), at 7 (Mar. 3, 2006).

23.     Upon information and belief, Imperial Nurseries and Griffin Land intended to procure such cheap seasonal labor by hiring temporary foreign workers for the 2006 season.

24.     Imperial Nurseries and Griffin Land hired Forero and Pro Tree to provide labor for Imperial Nurseries' operations.  Defendants Imperial Nurseries and Griffin Nurseries contracted with Forero and Pro Tree to this end.

25.     Acting on behalf of Imperial Nurseries and Griffin Land, Defendants Schaan and Galici negotiated, or caused to be negotiated, the terms and conditions of a contract with Forero and Pro Tree, pursuant to which contract Pro Tree would recruit and supply workers for Imperial's nurseries in Granby, Connecticut for approximately six months beginning in the spring of 2006.

26.     These negotiations were conducted in late 2005 and early 2006.

27.     At the conclusion of its negotiations with Forero and Pro Tree, and acting on behalf of Imperial Nurseries and Griffin Land, Defendants Schaan and Galici executed or caused to be executed a contract with Forero and Pro Tree.

28.     Upon information and belief, Defendants Schaan, Galici, and Forero negotiated or caused to be negotiated the terms of this contract, and sent or caused to be sent, this contract through the mail and/or wires.

29.     Visas for seasonal or temporary foreign workers are available under the H-2A program for agricultural workers and the H-2B program for non-agricultural workers. Both types of visa are non-transferable and valid only for employment with the petitioning employer, and they are valid only for the type of work and work itinerary for which they are issued.

30.     The H-2A program entails more requirements for employers and more protections for workers than does the H-2B program.

31.     To obtain either H-2A or H-2B visas, an employer must obtain the approval of multiple state and federal agencies.

32.     Defendants Griffin Land, Imperial Nurseries, Gregory Schaan, and Anthony Galici, who had previously employed "direct-hire" H-2A workers, were fully aware of these statutory requirements and that representations would be made to state and federal agencies.

33.     Defendants Schaan and Galici knew, or had constructive knowledge, that neither Imperial Nurseries nor Pro Tree had filed visa applications with U.S. DOL for the Plaintiffs to work at Imperial Nurseries' facilities in Connecticut.

34.     Upon information and belief, Defendants Griffin Land, Imperial Nurseries, Gregory Schaan, and Anthony Galici did not place advertisements for the jobs that were completed by Plaintiffs, as was required by federal law.

35.     In 2005 or 2006, Imperial Nurseries contracted with Forero and Pro Tree to represent Imperial Nurseries in filing the applications and petitions required of employers seeking foreign workers.

36.     In 2005 or 2006, Forero and Pro Tree mailed and/or faxed applications for foreign workers to the U.S. Department of Labor ("U.S. DOL") and the U.S. Citizenship and Immigration Service ("U.S. CIS").  Upon information and belief, the applications sent to both agencies requested approval of H-2B workers for pine tree work in North Carolina.

37.     Forero and Pro Tree did not intend to supply H-2B workers to labor in the North Carolina pine forests, and did not intend to be bound by the representations to U.S. DOL

and U.S. CIS.  Forero and Pro Tree intended to use any workers they were able to recruit and who were granted visas for nursery work at the Imperial Nurseries and Griffin Land operations in Connecticut.

38.     Upon information and belief, Defendants Schaan and Galici executed, or caused to be executed, the contract with Forero and Pro Tree with full knowledge that Forero and Pro Tree intended to apply for H-2B visas and that such applications would constitute visa fraud under 18 U.S.C. § 1546.

Fraudulent Recruitment of the March Plaintiffs in Guatemala

39.     Acting through a recruiter located in Guatemala, Defendants Pro Tree and Imperial Nurseries recruited individuals, including Plaintiffs, to travel to the United States to perform labor.  Defendants fraudulently obtained U.S. DOL certification and U.S. CIS approval for this purpose.

40.     Acting with the authorization of Imperial Nurseries and Pro Tree, in 2005 the Guatemalan recruiter offered work to Guatemalan nationals in and around Guatemala City, including ten Plaintiffs: Carlos Aguilar, Leopoldo Santos Catu, Santos Chajchaguin, Marvin Coto, Esteban Espinoza, Walter Hernandez, Angel Mendoza, Carlos Pinto, Hector Rodas-Lopez, and Luis Amilcar Rodriguez (hereinafter "March Plaintiffs").

41.     Through the Guatemalan recruiter, Forero and Pro Tree, with the authorization of Imperial Nurseries and Griffin Land, repeated the fraudulent representations they had made to U.S. DOL in its foreign labor certification petition to the March Plaintiffs, promising that they would employ them to plant pine trees in North Carolina at a wage of $7.50 per hour.  Plaintiffs accepted this offer.

42.     With the authorization of Forero and Pro Tree, the Guatemalan recruiter arranged for Plaintiffs' plane tickets to the United States.  Plaintiffs paid the Guatemalan recruiter for the plane tickets.

43.     The Guatemalan recruiter also scheduled Plaintiffs' interviews at the U.S. embassy to apply for their visas. Plaintiffs paid the visa fees and postage themselves.

44.     These expenditures were so great that Plaintiffs were forced to take out loans in Guatemala to cover the cost.

45.     Defendants never reimbursed Plaintiffs for these visa and travel expenses, which were primarily for the benefit and convenience of the Defendants.


Fraudulent Recruitment of the April Plaintiffs in Guatemala

46.     Later on, after four of the March Plaintiffs (Espinoza, Rodas, Pinto, and Carlos Aguilar) fled from Imperial Nurseries to escape the harsh working conditions, Imperial Nurseries instructed Forero and Pro Tree to recruit replacement workers.

47.     Defendants' Guatemalan recruiter, acting again with the authorization of Imperial Nurseries and Pro Tree, recruited Plaintiffs Oreno and Alexander Aguilar (hereinafter "April Plaintiffs").

48.     The manner of recruitment was nearly identical to the recruitment of the March Plaintiffs, described above in paragraphs 39-45.  The April Plaintiffs were offered work as pine tree workers in North Carolina at a rate of $7.50 an hour.  They accepted this offer and paid for the plane tickets and visa fees themselves, taking out loans to cover the cost.

49.     Acting as Pro Tree's agent, the Guatemala recruiter obtained plane tickets for the April Plaintiffs to travel to Connecticut, not North Carolina.


March Plaintiffs' Journey to the Imperial Work Site in Connecticut

50.     The March Plaintiffs flew to Greensboro, North Carolina on or about March 18, 2006.  U.S. CIS inspected and admitted each of the March Plaintiffs on H-2B visas.

51.     The March Plaintiffs were met at the airport by an agent or employee of Pro Tree. He refused to give his name and identified himself only as "el Chino."

52.     "El Chino" told the March Plaintiffs that he would take them to the job site and ordered them to enter a small white van.

53.     Because of the size of the van, the March Plaintiffs were not able to wear seat belts, and some of the Plaintiffs were forced to sit on the floor.

54.     Upon information and belief, "el Chino" was not properly registered to transport migrant workers, and the van was not in compliance with federal safety standards.

55.     The March Plaintiffs believed that their destination was to be North Carolina as promised.  "El Chino" did not explain that he was taking them to Connecticut.

56.     The van ride lasted many hours.  "El Chino" allowed Plaintiffs to leave the van only for brief restroom stops.  They were not allowed to buy meals or sleep, except to the extent they could rest without leaving the van.

57.     "El Chino" justified these restrictions by threatening the March Plaintiffs that if the U.S. police saw them, they would be deported back to Guatemala.

58.     Rather than taking the March Plaintiffs to a job site in North Carolina, "el Chino" transported them to Hartford, Connecticut.

59.     Upon arriving in Hartford on or about March 19, 2006, "el Chino" delivered the bewildered March Plaintiffs into the custody of Defendant William Forero, who ordered them into two small apartments and told them to report for work the next day.

60.     The Plaintiffs shared rooms in the apartment.  Because there were no beds or other furniture, the Plaintiffs slept on the floor.

61.     No food, cleaning supplies, or other basic necessities were present in the apartment.

62.     Other employees of defendants had resided in the apartments prior to Plaintiffs' arrival.  When the Plaintiffs arrived, "el Chino" removed the apartments' current occupants.  The apartment was never cleaned between occupancies and was filthy when Plaintiffs arrived.

63.     The apartment was in a dangerous neighborhood, and it was robbed at least once while Plaintiffs resided there.

64.     Upon information and belief, the apartment in Connecticut was rented and/or controlled by Defendants.


April Plaintiffs' Journey to the Imperial Work Site in Connecticut

65.     The two April Plaintiffs flew to the United States approximately one month later, on or about April 12, 2006.

66.     The April Plaintiffs flew from Guatemala to Atlanta, Georgia, and from there flew on to Hartford, arriving on or about April 12, 2006.  U.S. CIS inspected and admitted each of the April Plaintiffs on H-2B visas.

67.     The April Plaintiffs were met at the airport by Forero.

68.     Forero ordered the April Plaintiffs to join the March Plaintiffs in the same apartments, and ordered them to appear at work the day after they arrived in Connecticut.

Working Arrangements

69.     Once each group of Plaintiffs arrived in Connecticut, Forero and Aranda informed them that they would not be planting pine trees, as they had been told by the Guatemalan representative, but would instead be working in the fields of Imperial Nurseries.

70.     Forero and Aranda also told the workers that they would not be paid by the hour, as the Guatemalan representative had promised and as the U.S. DOL certification had stated, but instead by the piece or "task" ("*tarea*").

71.     On or about March 21, 2006, during an orientation that occurred in an Imperial Nurseries office, Defendants Forero and Aranda presented the March Plaintiffs with a document, apparently a contract, which they demanded the Plaintiffs sign.  This document was in English, which the workers did not understand.

72.     Seeing no alternative, the March Plaintiffs signed the document.  Despite the Defendants' assurances, the March Plaintiffs never received copies of the document.

73.     Forero and Aranda gave the April Plaintiffs a similar introduction in an Imperial Nurseries management office when they arrived in late April 2006, telling them they would be doing nursery work, not pine tree work, and would be paid by the piece and not by the hour.

74.     Forero and Aranda demanded that the April Plaintiffs also sign a document, apparently a contract, which was written mostly in English and which the April Plaintiffs did not understand.

75.     In addition, Forero and Aranda ordered the April Plaintiffs to sign a document described as containing a list of "rules of the workplace."  This document, too, was in English, which none of the workers understood.

76.     Aranda claimed to read part of the "rules of the workplace" aloud to the April Plaintiffs in Spanish, but he refused to read the entire document or to allow the workers independently to verify the document's contents.  He insisted that the April Plaintiffs sign the documents.

77.     Seeing no alternative, the April Plaintiffs signed the documents. They never received a copy of either document from Defendants.


Confiscation of Plaintiffs' Passports

78.     Upon the arrival of each group of Plaintiffs in Connecticut, Forero and Aranda ordered them to surrender their passports as a condition of employment.

79.     The confiscation of Plaintiffs' passports occurred in an office of Imperial Nurseries.

80.     Forero and Aranda stated that they needed Plaintiffs' passports for paperwork and for safekeeping, and that Plaintiffs would receive their passports back only at the end of their six months of employment at Imperial Nurseries, when returning to Guatemala.

81.     Forero and Aranda further explained that they were retaining the Plaintiffs' passports to ensure that they would continue to work.  Defendants Forero and Aranda stated that they did not want the Plaintiffs to be able to leave their employment if they did not like the work.

82.   Plaintiffs were told that numerous workers had previously left the Imperial Nurseries fields because of poor working conditions.

83.   Defendants Forero and Aranda retained Plaintiffs' passports specifically to stop the exodus of workers and ensure a consistent workforce.

84.   Aranda also stated that, because Defendants had arranged for the Plaintiffs to come to the United States, they had a legal right to hold their passports.

85.   Unfamiliar with U.S. immigration and labor law, uncertain about their rights, isolated, and seeing no alternative, all Plaintiffs except Carlos Aguilar surrendered their passports to Defendants Forero and Aranda.

86.   Carlos Aguilar, through elaborate excuses, retained his passport despite insistent demands from Forero and Aranda.  This and other actions branded him as an especially "troublesome" worker, and as a result, his wages, when paid, were even lower than the wages received by the other Plaintiffs.

87.   Forero and Aranda allowed Plaintiffs to reclaim their passports for only one purpose: to use as proof of identification when receiving wire money transfers from relatives in Guatemala.  Because their wages were so low, Plaintiffs were forced to request money from their families, rather than sending money home as they had planned.  Defendants required that Plaintiffs return their passports to Forero or Aranada immediately thereafter.

88.   Forero and Aranda regularly threatened Plaintiffs that they would be arrested or deported if they did not follow Defendants' instructions.

89.   Without regular access to their passports, none of the Plaintiffs (with the exception of Plaintiff Leopoldo Santos Catu, who had a valid New York State driver's

license from a previous visit to the United States) had proof of identification.  Unfamiliar with American law enforcement, Plaintiffs believed that their lack of identity documents left them vulnerable to arrest, imprisonment, or deportation at any time.

90.     Plaintiffs suffered acute mental anguish and emotional distress because of this perceived vulnerability.


Restrictions on Plaintiffs' Movement

91.     Defendants Forero and Aranda severely restricted Plaintiffs' contact with the outside world.

92.     Plaintiffs were forbidden from speaking to other workers in the Imperial Nurseries fields.

93.     Plaintiffs were isolated from the mail and from news, and had little contact with American society.

94.     Forero and Aranda held the only keys to the Plaintiffs' apartment mailboxes, and they regularly read and withheld mail that arrived from Plaintiffs' family members. Thus Plaintiffs were prevented from communicating with family and friends in Guatemala and the United States.

95.     Forero or Aranda repeatedly told Plaintiffs that they should not leave the apartments because the surrounding neighborhood was dangerous and they could be arrested and deported.

96.     On their one day off each week, Plaintiffs were not allowed to travel outside their apartments except with permission from Forero or Aranda and often were accompanied by an agent of Forero to ensure that they did not escape.

97.     Forero and Aranda also prohibited Plaintiffs from using public city buses, explaining that their visas did not allow them to ride the bus.  Plaintiffs were told that if authorities found them riding the bus, they could be deported.

98.     Forero also repeatedly told Plaintiffs not to leave the Hartford area, falsely claiming that their H-2B visas did not allow them to travel.

99.     Forero and Aranda forbade Plaintiff Angel Mendoza from visiting relatives who resided in Maryland.

100.    Similarly, Forero and Aranda refused to give Plaintiff Marvin Coto his passport when he requested it in the hopes of visiting relatives in Providence, Rhode Island.

101.    When Plaintiff Coto disobeyed Defendants' orders and traveled to Providence without his passport, Forero and Aranda isolated him for several hours and threatened to deport him if he did it again.  Defendants also told Mr. Coto that it was illegal to travel outside of the Hartford area, because his visa allowed him only to work, not to travel.

102.    When Plaintiff Coto complained about working conditions and requested the permanent return of his passport, Defendants Forero and Aranda threatened Plaintiff Coto, saying that they would call local police and immigration authorities to have him arrested.

103.    Forero further claimed that several workers who had previously been under his control, and who had disobeyed him, were now in jail.

104.    Such threats of arrest and deportation were received by all Plaintiffs and caused Plaintiffs to continue working against their will.

105.    The Plaintiffs believed, based on Forero and Aranda's statements, that the Defendants could use the police to force them to work, and could affect their ability to re-enter the United States on a valid visa in the future.

106.    Plaintiffs were thus effectively trapped in the employ of Griffin Land, Imperial Nurseries, and Pro Tree.  The workers felt they had no legal choice but to remain there.

<u>Working Conditions</u>

107.    The Defendants jointly employed the Plaintiffs to work in the fields and warehouse owned and operated by Griffin Land and Imperial Nurseries, preparing flowers, trees, shrubs, and other plants to be sold to residential and wholesale consumers.

108.    Plaintiffs typically worked thirteen hours each day, six days each week, with only two short meal breaks: approximately fifteen minutes for breakfast and twenty to thirty minutes for lunch.

109.    Defendants Griffin Land and Imperial Nurseries, through Defendant Jim Wells, directed the workers to move plants that had already been dug out of the ground and packaged in root balls or small containers from one location to another within the nursery's grounds, including the warehouse, growing fields, and storage areas.  Wells frequently communicated his directions to the Plaintiffs with the assistance of a Spanish-speaking agent and interpreter named "Eddie."

110.    At the instruction of Defendants, Plaintiffs also watered and fertilized plants in storage areas, and potted plants that were ready to be sold.

111.    Plaintiffs' work was jointly overseen and directed by Forero, Aranda, their agent Gerardo, and Defendants Griffin Land and Imperial Nurseries acting through Defendant Wells and Wells's interpreter Eddie.

112.    Agents and employees of Imperial Nurseries and Griffin Land, including Wells and Wells's interpreter Eddie, directly supervised Plaintiffs in their daily work.

113.    Defendant Wells gave work instructions to Forero and Aranda on a daily basis, who then translated Wells's instructions into Spanish for Plaintiffs.

114.    Also on a daily basis, Wells supervised Plaintiffs' work personally.  He gave oral instructions to individual Plaintiffs with Eddie interpreting.  He also directed them through gestures.

115.    Frequently, instructions for the day's tasks were written by Defendant Jim Wells on Imperial Nurseries stationery and given directly to Plaintiff Leopoldo Santos Catu, who possesses limited English ability.  Plaintiff Catu then disseminated these instructions to all other Plaintiffs.

116.    On some days, Defendants Forero and Aranda were not present at the worksite. On these days, Defendant Wells and other Imperial Nurseries personnel were the sole supervisors of Plaintiffs.

117.    Defendant Wells and other Imperial Nurseries personnel frequently performed quality control inspections to ensure that Plaintiffs were correctly executing their assigned tasks.

118.    Plaintiffs operated tractors owned by Imperial Nurseries and Griffin Land, for which they received training from an Imperial employee, Gregory Piwonsky.  Upon

successful completion of the training, Plaintiffs were issued tractor "licenses" by Imperial Nurseries.

119.   The tractor "licenses" state that the Plaintiffs' operation of tractors was to be supervised by Imperial Nurseries management.

120.   The tractors operated by Plaintiffs, as well as other equipment and tools used by Plaintiffs, were owned by Defendants Griffin Land and/or Imperial Nurseries.

121.   At all relevant times, Plaintiffs worked solely on land owned and/or controlled by Griffin Land and Imperial Nurseries and solely for the benefit of Defendants.

122.   In performing their duties in the fields, Plaintiffs worked directly with other laborers who were directly employed by Imperial Nurseries.

123.   Plaintiffs performed discrete labor that was integral to Griffin Land and Imperial Nurseries' operations.

124.   Griffin Land and Imperial Nurseries were the ultimate authority determining the number of workers to be hired, the conditions under which they should be employed, the tasks Plaintiffs were to perform, and their wages.

125.   Griffin Land and Imperial Nurseries had the power to fire any individual Plaintiff at any given time, or to terminate the employment of all Plaintiffs once their usefulness was exhausted.


Defendants' Failure to Pay Wages

126.   Upon information and belief, Griffin Land, Imperial Nurseries, and Pro Tree failed to keep accurate wage and hour records as required by federal and state law.

127.    Plaintiffs' hourly wages fell below both state and federal minimum wage requirements.

128.    Defendants failed to pay the wage rate promised in the application for foreign labor certification that they submitted to the U.S. DOL and which was promised to the Plaintiffs at the time of their recruitment in Guatemala.

129.    Although Plaintiffs worked well over forty hours in each workweek, Defendants failed to pay Plaintiffs overtime at the rate of one and a half times the regular rate of pay for their overtime hours, as required by federal law, state law, and the foreign labor certification.  Defendants Schaan, Galici, and Wells knew or should have known that Plaintiffs were working extremely long hours in the Imperial fields each week and were not receiving the wages to which the Plaintiffs were entitled by law.

130.    Defendant Aranda paid Plaintiffs their wages on behalf of Griffin Land and Imperial Nurseries every two weeks, typically in cash.

131.    The ten March Plaintiffs received their first payment of wages after two weeks of work.  They were not paid for the first week; Forero stated that their wages for the first week of work were being held "in reserve" to be paid only upon termination of the contract.

132.    Forero also stated that he had made deductions for taxes, rent and security deposit for the apartment, a car wash, and the tools used at the worksite.  Plaintiffs had not been previously informed about these deductions.

133.    Aranda gave some of the Plaintiffs pay stubs indicating the amounts paid and withheld for the first week of labor.

134.    In subsequent wage payments, Plaintiffs received substantially less than minimum wage for the hours they worked, and did not receive overtime pay.  Their wages came to approximately $3.75 per hour, prior to substantial, illegal deductions which reduced their hourly wages even further.

135.    Plaintiffs never received a tax statement from Defendants.

136.    Plaintiffs were forced to beg for money from their relatives in Guatemala because Defendants failed to pay them enough to cover the costs of essentials like food and clothing.

137.    Plaintiffs were constantly aware that, at these confiscatory pay rates, they would be unable to pay the debts they had incurred in Guatemala in order to fly to the United States.  Plaintiffs' inability to repay their debts worried them deeply.

138.    Defendants Forero and Aranda exploited Plaintiffs' fears, reminding them of their debts at home and telling them they would never be able to repay their creditors if the Plaintiffs left Imperial's employ.  Leaving the United States without first repaying these substantial debts was not a realistic option for Plaintiffs or their families.  Defendants frequently referenced this fact when threatening Plaintiffs with deportation.


Denial of Medical Care, Abuse, and Intimidation of the Plaintiffs

139.    In the course of their work, Plaintiffs had to handle toxic chemicals and fertilizers. None of the Defendants provided the Plaintiffs with sufficient safeguards or protective clothing.

140.    The nature and pace of the work often resulted in injuries.  Several of the Plaintiffs, including Plaintiffs Espinoza and Rodas, became ill during the first two weeks.

141.    Defendants refused to allow the injured workers time off to recover from their injuries, or to seek medical attention.  Defendants made statements to Plaintiffs with words to the effect of "You are here to work, not to be sick."

142.    When a Plaintiff became sick, one or more Defendants threatened them with words to the effect of  "It would be better that you went back to Guatemala" or "If you get sick, we will send you back to Guatemala."

143.    Plaintiff Coto became very ill while working in Imperial's fields, possibly from pesticides used on the property.  He was denied adequate medical care and made to do heavy lifting in the rain without proper clothing, even though he had a high fever and swollen lymph nodes. When he asked to see a doctor, Defendants informed him that if he was sick, it would be better for him to go home.

144.    Plaintiff Angel Mendoza injured his shoulder while lifting heavy items without the assistance of others.  Despite extreme pain, Mendoza continued to work due to knowledge of Plaintiff Coto's experience, described above in ¶ 143, and the statements that Defendants made regarding the unavailability of medical services.

145.    Plaintiff Carlos Aguilar was also injured while working at Imperial.  Plaintiff Aguilar was unable to receive medical attention because of Defendant Forero's statements that anyone who was sick or injured would be sent back to Guatemala without pay.

146.    Forero and Aranda repeatedly and fraudulently told the workers that if they did not work harder, or if they were troublesome, they would be deported.

147.    Forero and Aranda also subjected Plaintiffs to considerable verbal abuse, telling them repeatedly that their work was substandard and that they were lazy, worthless, and

good-for-nothing.  Gerardo, an agent of Pro Tree who helped oversee Plaintiffs in the fields, also used extremely abusive and crude language to berate the Plaintiffs and erode their confidence.

148.   On several occasions, Defendant Forero called the workers "*indios*," an extremely derogatory racial epithet used to describe indigenous (Mayan) people in Guatemala.  At one point, he withheld water from Plaintiff Coto, remarking that "*Indios* work harder if you don't give them water."

149.   On the occasions that a Plaintiff complained about his working conditions, Forero and Aranda would isolate and berate him, threatening to withhold wages and deport the Plaintiff.

150.   At one point during the first two weeks, Plaintiff Carlos Aguilar complained to Forero that the workers had been deliberately misled about the nature of the work they would be doing in the United States.  Forero retaliated by punishing Aguilar, confining him to the apartment without pay for one workday.  Aranda kept surveillance of the apartment from a van parked across the street, ensuring that Mr. Aguilar could not leave.

151.   Plaintiff Angel Mendoza also complained to Forero and Aranda about the working conditions and pay.  In retaliation for these complaints, Defendants sent Plaintiff Mendoza to a separate field for the day and forced him to move a number of heavy carts alone.  These carts normally required three workers to move.

152.   Plaintiff Leopoldo Santos Catu also complained to Forero, demanding better pay and working conditions.  Forero threatened Plaintiff Santos Catu with deportation, saying also that he would send all of the Plaintiffs back to Guatemala if they continued to make demands.

153.     Upon information and belief, Defendants punished Plaintiffs Carlos Aguilar, Mendoza, and Santos Catu in part to set an example to the other Plaintiffs of what happens to those who complain.

154.     Defendants inflicted this psychological and verbal abuse to coerce Plaintiffs into believing that they would default on their debts and be arrested, imprisoned, deported, or otherwise seriously harmed if they tried to leave Imperial.

155.     The Plaintiffs continued to work only because they felt they had no other option. They were disoriented, confused, and alone in a foreign country where they did not speak the language.

156.     Upon information and belief, Imperial Nurseries had charged Forero and Aranda with maintaining discipline among Plaintiffs and meeting production targets.

157.     At all times relevant to this action, Forero and Aranda were acting with apparent or implied authority of Imperial Nurseries and Griffin Land.

158.     It was in the interest of Imperial and Griffin and on their behalf, and with the actual or constructive knowledge of Imperial and Griffin, that Forero and Aranda abused, intimidated, defrauded, and coerced Plaintiffs as described above.

159.     From time to time, Plaintiffs complained to Defendant Wells of the abuse and exploitation that they were suffering and of their failure to receive wages as promised and lawfully due.  Based on these complaints, together with his personal observations and other information, Defendant Wells had actual or constructive knowledge that Forero and Aranda abused, intimidated, defrauded, and coerced Plaintiffs as described above, and further that Plaintiffs were not receiving wages as promised and lawfully due.

160.    Upon information and belief, Wells knew or should have known that Forero and Aranda would abuse, intimidate, defraud, or coerce Plaintiffs as described above on behalf of Imperial and Griffin.

161.    Wells routinely communicated information directly and indirectly to senior Imperial management, including Schaan and Galici, regarding conditions and production in Imperial's field operations.  Upon information and belief, Wells also communicated Plaintiffs' complaints about their abusive treatment and failure to receive wages promised and lawfully due, directly or indirectly, to to senior Imperial management, including Schaan and Galici.

162.    Defendants Schaan and Galici, as management of Imperial Nurseries, supervised Defendant Wells and knew or had constructive knowledge of the general conduct of Imperial staff and employees and of the treatment and working conditions of all workers, including Plaintiffs, in Imperial Nurseries' fields.

163.    Defendants Schaan and Galici, as management of Imperial Nurseries, maintained offices on the same premises where Plaintiffs worked and knew or had constructive knowledge of the Plaintiffs' working conditions.

164.    Towards the end of Plaintiffs' employment, the U.S. DOL received information regarding the mistreatment of workers at Imperial Nurseries.

165.    U.S. DOL investigators then performed perfunctory interviews, in which investigators met briefly with some of the Plaintiffs to inquire about wage and hour violations.  The government investigators conducted their brief interviews at Imperial Nurseries, with the knowledge and in the presence of Imperial management.

166.    Because of the pattern of threats and claims by Defendants Forero and Aranda that they could affect Plaintiffs' arrest or deportation, Plaintiffs were afraid to speak freely to the U.S. DOL investigators.

167.    For these reasons, Plaintiffs did not feel that they could fully disclose the abuse they had experienced and witnessed during their brief interviews with U.S. DOL.

168.    Later, Defendants Forero and Aranda used this incident as further evidence that they had connections with "the authorities" and could deport the Plaintiffs at will.


Plaintiffs' escapes

169.    Because of the harsh working conditions, substandard pay, and abuse by the Defendants, Plaintiffs Espinoza, Rodas, Pinto, and Carlos Aguilar resolved to escape shortly after receiving their first week's wages.

170.    Fearing that Defendants would call the police to stop them, these four Plaintiffs decided that they could not flee without their passports.  They obtained their passports from Aranda by pretending that they were needed to receive a money transfer.  These four Plaintiffs then fled the apartment secretly.

171.    After the escape of these four Plaintiffs, Defendants recruited the April Plaintiffs as replacements.

172.    Defendants further intimidated and coerced Plaintiffs by falsely representing that Espinoza, Rodas, Pintos and Carlos Aguilar had been arrested after they had escaped. Defendants continued to use the fear of arrest to manipulate Plaintiffs and compel their continued labor.

173.    Plaintiff Santos Catu was the next to escape.  He complained to Forero and Aranda about their unpaid wages and exploitative conditions.  In response, Forero and Aranda threatened him with deportation.

174.    Believing that his only choices were to continue working in exploitative and humiliating conditions in the Imperial Nurseries fields, or to return to Guatemala, Plaintiff Santos Catu refused to continue working.  Forero drove Plaintiff Santos Catu to Hartford's Bradley Airport on or about May 5, 2006, and sent him back to Guatemala. Plaintiff Santos Catu received no pay for the last two weeks that he worked.

175.    Just as when other Plaintiffs had escaped, Defendants falsely represented to the remaining Plaintiffs that Defendants had caused Plaintiff Santos Catu to be deported. Defendants misrepresented this fact to maintain control over the remaining Plaintiffs.

176.    All other Plaintiffs remained in Imperial's employ until mid-June.  Forero and Aranda continued to retain their passports until on or about June 1, 2006.  Plaintiffs finally fled the apartment in Hartford on or about June 1, 2006.

### FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT ("FLSA")
#### (*All Defendants*)

177.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 176 of this complaint as if fully set forth herein.

178.    At all times relevant to this case, Defendants Griffin Land, Frederick Danziger, Anthony J. Galici, Imperial Nurseries, Gregory Schaan, Jim Wells, Pro Tree, William Forero, and Hernando Aranda were joint and/or integrated employers within the meaning of 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2.

179.    Defendants failed to pay Plaintiffs the federal statutory minimum wage during the time they were employed by Defendants, in violation of 29 U.S.C. § 206(a)(1).

180.    Defendants failed to pay Plaintiffs overtime pay for all hours that they worked in excess of forty per week for each week in which Plaintiffs performed both exempt (agricultural) and non-exempt (non-agricultural) duties, as defined by 29 C.F.R. § 780.11, in violation of 29 U.S.C. § 207(a)(1).

181.    Defendants are estopped from alleging that Plaintiffs engaged solely in exempt agricultural work by their representations to state and federal agencies in connection with their fraudulent H-2B visa petitions, in which Defendants represented that Plaintiffs would be engaged in temporary or seasonal non-agricultural work.

182.    Defendants made unlawful deductions from Plaintiffs' wages for housing (which were not in compliance with federal and state safety codes) and for tool cleaning, tractor washing, and tractor repair (benefits which were primarily furnished for the Defendants' own convenience).  These unlawful deductions cumulatively brought Plaintiffs' wages below the statutory minimum in violation of 29 U.S.C. § 211(c).

183.    Defendants made deductions from Plaintiffs' wages for unspecified "taxes," which brought Plaintiffs' wages below the statutory minimum, and which Defendants then failed to direct to the appropriate federal and state tax authorities, in violation of 29 C.F.R. § 531.38.

184.    Defendants failed to reimburse Plaintiffs within their first week of employment for their plane fare to the United States and the associated visa fees, which were expenses incurred primarily for the benefit of the Defendant employers, as required by 29 C.F.R. §

531.35.  Because Defendants failed to do so, Plaintiffs were not paid all wages free and clear during their first week of work, in violation of 29 U.S.C. § 206(a)(1).

185.    As a result of these violations, Plaintiffs suffered damages.

186.    Defendants are jointly and severally liable to Plaintiffs for these violations of their rights under federal law.

187.    Plaintiffs are entitled to an award of damages for unpaid minimum wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as well as attorneys' fees, in an amount to be determined at trial.  29 U.S.C. § 216(b).


SECOND CLAIM FOR RELIEF
MIGRANT AND SEASONAL AGRICULTURAL
WORKER PROTECTION ACT ("AWPA")
(*All Defendants*)

188.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 187 of this complaint as if fully set forth herein.

189.    At all times relevant to this case, Defendants Pro Tree, William Forero and Hernando Aranda were farm labor contractors within the meaning of 29 U.S.C. § 1802(7).

190.    At all times relevant to this case, Defendants Griffin Land, Frederick Danziger, Anthony J. Galici, Imperial Nurseries, Gregory Schaan, and Jim Wells were agricultural employers within the meaning of 29 U.S.C. § 1802(2).

191.    At all times relevant to this case, the Plaintiffs were migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A).

192.    Defendants intentionally violated AWPA by:

a. Failing to disclose in writing, to each Plaintiff at the time of that Plaintiff's recruitment, complete and accurate information about the employment in a language the Plaintiff understands, as required by 29 U.S.C. § 1821(a), including:

    i. The place of employment, 29 U.S.C. § 1821(a)(1);

    ii. The wage rates to be paid, 29 U.S.C. § 1821(a)(2);

    iii. The crops and kinds of activities on which the worker may be employed, 29 U.S.C. § 1821(a)(3);

    iv. The transportation, housing, and any other employment benefit to be provided, and any costs to be charged for each of them, 29 U.S.C. § 1821(a)(5); and

    v. Whether State workers' compensation insurance is provided, 29 U.S.C. § 1821(a)(8).

b. Failing to post, in a conspicuous place, a statement of Plaintiffs' rights and protections under the AWPA, in violation of 29 U.S.C. § 1821(b);

c. Failing to make, keep, and preserve records for each Plaintiff, as required by 29 U.S.C. § 1821(d)(1);

d. Failing to provide each Plaintiff with an itemized written statement of the information contained in such records every pay period, as required by 29 U.S.C. § 1821(d)(2);

e. Knowingly providing false or misleading information concerning the terms and conditions of employment in violation of 29 U.S.C. § 1821(f);

f.   Failing to pay the wages owed to each worker when due, in violation of 29 U.S.C. § 1822(a);

g.   Violating, without justification, the terms of the working arrangement in violation of 29 U.S.C. § 1822(c);

h.   Failing to ensure that the housing in which Defendants forced Plaintiffs to live met federal and state health and safety codes, in violation of 29 U.S.C. § 1823(a);

i.   Housing Plaintiffs without first securing the certification required by 29 U.S.C. § 1823(b);

j.   Failing to post or present each worker with a statement of the terms and conditions of occupancy of the housing, in violation of 29 U.S.C. § 1821(c);

k.   Using or causing to be used certain vehicles for transportation of the Plaintiffs without first ensuring said vehicles met the minimum safety standards set out in 29 C.F.R. §§ 500.104, 500.105, in violation of 29 U.S.C. § 1841(b)(1)(A);

l.   Failing to ensure that the vehicle used to transport Plaintiffs between their housing and the work site was operated by a qualified driver as set out in 29 C.F.R. §§ 500.104-105, in violation of 29 U.S.C. § 1841(b)(1)(B);

m.   Failing to carry adequate insurance on the vehicles used to transport the Plaintiffs, as required by 29 U.S.C. § 1841(b)(1)(C) and 29 C.F.R. § 500.121;

n.   Utilizing the services of a farm labor contractor not properly registered and authorized to engage in the activities for which he was utilized, in violation of 29 U.S.C. § 1842; and

o.  Discriminating against and intimidating Plaintiffs for voicing complaints about their working conditions, in violation of 29 U.S.C. § 1855(a).

193.    As a result, Plaintiffs suffered damages.

194.    Defendants are jointly and severally liable to Plaintiffs for these violations of their rights under federal law.

195.    For each violation of AWPA, each Plaintiff is entitled to recover the amount of his actual damages or up to $500 in statutory damages, whichever is higher, pursuant to 29 USC § 1854(c)(1).

THIRD CLAIM FOR RELIEF
CONNECTICUT WAGE AND HOUR LAW
(*All Defendants*)

196.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 195 of this complaint as if fully set forth herein.

197.    Plaintiffs bring this claim under §§ 31-68 and 31-72 of Connecticut's Wage and Hour Law, Conn. Gen. Stat. §§ 31-58 *et seq*., against all Defendants.

198.    At all relevant times, said Defendants have been "employers" within the meaning of Conn. Gen. Stat. §§ 31-58(e) and 31-71a(1).  At all relevant times, Defendants employed Plaintiffs within the meaning of Conn. Gen. Stat. § 31-58(h).  At all relevant times, Plaintiffs were employees of Defendants within the meaning of §§ 31-58(f) and 31-71a(2).

199.    Defendants, knowingly and in bad faith,

a. Failed to pay wages due to Plaintiffs for work performed in the State of Connecticut at the promised rate of $7.50 per hour, in violation of Conn. Gen. Stat. §§ 31-71a through 31-71j;

b. Failed to pay wages due to Plaintiffs for work performed in the State of Connecticut at the state minimum wage rate of $7.40 per hour, in violation of Conn. Gen. Stat. §§ 31-60(a);

c. Failed to pay overtime wages due to Plaintiffs for hours worked in excess of forty per week in each week during which Plaintiffs performed both exempt (agricultural) and non-exempt (non-agricultural) duties, in violation of Conn. Gen. Stat. §§ 31-76b and 31-76c;

d. Withheld wages from Plaintiff Santos Catu on termination of employment, in violation of Conn. Gen. Stat. §§ 31-70 and 31-71c;

e. Failed to make wage payments weekly, in violation of Conn. Gen. Stat. § 31-71b;

f. Withheld part of Plaintiffs' wages unlawfully, in violation of Conn. Gen. Stat. § 31-71e;

g. Failed to advise Plaintiffs in writing, at the time of hiring, of the rate of remuneration, and hours of employment and wage payment schedules, in violation of Conn. Gen. Stat. § 31-71f;

h. Failed to make available, either in writing or through a posted notice, any employment practices and policies or change therein with regard to wages, vacation pay, sick leave, health and welfare benefits, and comparable matters, in violation of Conn. Gen. Stat. § 31-71f;

      i.    Unlawfully withheld part of Plaintiffs' wages as "deductions" for housing above the state-mandated maximum of $3 a week for a shared room, in violation of Conn. Gen. Stat. § 31-60(b) and Conn. Agencies Regs. § 31-60-3(f); and

      j.    Failed to ensure that the housing facilities met reasonable specifications with respect to size, privacy, sanitation, heat, light and ventilation, in violation of Conn. Gen. State. § 31-60(b) and Conn. Agencies Regs. § 31-60-3(f)).

200.    As a result, Plaintiffs suffered damages.

201.    Defendants are estopped from alleging that Plaintiffs engaged solely in exempt agricultural work by their representations to state and federal agencies in connection with their fraudulent H-2B visa petitions, in which Defendants represented that Plaintiffs would be engaged in temporary or seasonal non-agricultural work.

202.    Defendants are jointly and severally liable to Plaintiffs for these violations of their rights under state law.

203.    Plaintiffs are entitled to an award of damages for unpaid wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as well as attorneys' fees, in an amount to be determined at trial.  Conn. Gen. Stat. §§ 31-68, 31-72.


### FOURTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
(*Defendants Griffin Land, Imperial Nurseries,*
*Pro Tree, William Forero, Hernando Aranda*)

204.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 203 of this complaint as if fully set forth herein.

205.     Plaintiffs bring this claim against Defendants Griffin Land, Imperial Nurseries, Pro Tree, William Forero, and Hernando Aranda.

206.     Defendants collectively entered into contracts with Plaintiffs and each party's acceptance was supported by good and valuable consideration.

207.     Plaintiffs fulfilled their contractual obligations by traveling to the United States and laboring for Defendants.

208.     Defendants breached the contracts with Plaintiffs by failing to pay contractually established wages for work performed by Plaintiffs.

209.     Because of Defendants' breach of contract, Plaintiffs suffered from a loss of expected wages.

210.     Plaintiffs are entitled to monetary damages equal to the amount specified in contracts entered with Defendants.

211.     Further, Defendants' conduct was outrageous, wanton, and malicious, imbued with an evil motive and violence, and was performed with a reckless indifference to the interests of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages for Defendants' breach of contract.


FIFTH CLAIM FOR RELIEF
BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(*Defendants Griffin Land, Imperial Nurseries,*
*Pro Tree, William Forero, Hernando Aranda*)

212.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 211 of this complaint as if fully set forth herein.

213.     Plaintiffs bring this claim against Defendants Griffin Land, Imperial Nurseries, Pro Tree, William Forero, and Hernando Aranda.

214.    Defendants collectively entered into contracts with Plaintiffs and each party's acceptance was supported by good and valuable consideration.

215.    Plaintiffs fulfilled their contractual obligations by traveling to the United States and laboring for Defendants.

216.    Defendants, in bad faith, denied Plaintiffs the benefit of the contract by failing to pay the contractually established wages and failing to provide the contractually established working conditions.

217.    Defendants' bad faith is demonstrated by the fraudulent promises Defendants made to Plaintiffs, by Defendants' intent to mislead Plaintiffs, and by Defendants' neglectful refusal to fulfill their duties to Plaintiffs as set out in the contracts.

218.    Because of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs suffered from a loss of expected wages.

219.    Plaintiffs are entitled to monetary damages equal to the amount specified in contracts entered with Defendants.

220.    Further, Defendants' conduct was outrageous, wanton, and malicious, imbued with an evil motive and violence, and was performed with a reckless indifference to the interests of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages for Defendants' breach of the implied covenant of good faith and fair dealing.


SIXTH CLAIM FOR RELIEF
UNJUST ENRICHMENT & QUANTUM MERUIT
(*Defendants Griffin Land, Imperial Nurseries,*
*Pro Tree, William Forero, Hernando Aranda*)

221.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 220 of this complaint as if fully set forth herein.

222.    Plaintiffs bring this claim against Defendants Griffin Land, Imperial Nurseries, Pro Tree, William Forero, and Hernando Aranda.

223.    By laboring at Imperial Nurseries' facilities, Plaintiffs provided benefits to Defendants.

224.    Plaintiffs expected to be compensated for the labor they provided to Defendants. Defendants' unjust failure to pay Plaintiffs prevailing wages for the labor performed constituted a distinct detriment to the Plaintiffs.

225.    Accordingly, Plaintiffs are entitled to money damages equal to the reasonable value of the labor provided to Defendants.

226.    Further, Defendants' conduct was outrageous, wanton, and malicious, imbued with an evil motive and violence, and was performed with a reckless indifference to the interests of Plaintiffs.   Accordingly, Plaintiffs are entitled to punitive damages for Plaintiff's breach of a contract implied through quantum meruit.


SEVENTH CLAIM FOR RELIEF
FRAUD
The Guatemala Fraud
(*Defendants Pro Tree, William Forero, Hernando Aranda*)

227.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 226 of this complaint as if fully set forth herein.

228.    Plaintiffs bring this claim against Defendants Pro Tree, William Forero, and Hernando Aranda.

229.    Defendants committed fraud by representing, either directly or through their agent, the Guatemalan representative, to Plaintiffs that they would perform work planting

trees in North Carolina and would be paid $7.50 per hour (hereinafter "the Guatemala Representations").

230.    When Defendants made the Guatemala Representations to Plaintiffs, Defendants knew these representations to be false.  Defendants knew that they had not arranged for Plaintiffs to perform any work planting pine trees in North Carolina and that Plaintiffs would not receive $7.50 per hour.

231.    Defendants made the Guatemala Representations in order to induce Plaintiffs to travel to the United States to perform seasonal labor.

232.    Plaintiffs traveled to the United States at their detriment.  By traveling to the United States at their personal expense, Plaintiffs subjected themselves to, *inter alia*, the racketeering, trafficking, and forced labor activities of Defendants and suffered the loss of their time and wages.

233.    Plaintiffs were justified in their reliance on Defendants' fraudulent representations.

234.    Plaintiffs are entitled to monetary damages in an amount equivalent to the detriment they suffered by relying upon Defendants' fraudulent representations.

235.    Further, Defendants' conduct was outrageous, wanton, and malicious, imbued with an evil motive and violence, and was performed with a reckless indifference to the interests of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages for Defendants' fraudulent Guatemala Representations.

### EIGHTH CLAIM FOR RELIEF
### FRAUD
### The Connecticut Fraud
(*Defendants Griffin Land, Imperial Nurseries,*
*Pro Tree, William Forero, Hernando Aranda*)

236.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 235 of this complaint as if fully set forth herein.

237.    Plaintiffs bring this claim against Defendants Griffin Land, Imperial Nurseries, Pro Tree, William Forero, and Hernando Aranda.

238.    Defendants and/or their agents fraudulently represented that Plaintiffs would be imprisoned and/or deported by U.S. law enforcement officers if Plaintiffs did not fulfill production quotas, did not continue working, complained about working conditions, sought medical attention, or traveled outside the Hartford region (hereinafter "the Connecticut Representations").

239.    When Defendants made the Connecticut Representations, these Defendants knew these representations to be false.  Defendants knew that they were unable to effect the imprisonment or deportation of Plaintiffs.

240.    Defendants made the Connecticut Representations in order to induce Plaintiffs to continue working against their will.

241.    Plaintiffs justifiably relied upon these fraudulent representations.  Plaintiffs continued working at Imperial Nurseries' facilities to their detriment.  Plaintiffs did not receive fair compensation for their labor.   Moreover, Plaintiffs were continuously in a state of fear as a result of Defendants' fraudulent representations.

242.    Plaintiffs are entitled to monetary damages in an amount equivalent to the detriment they suffered by relying upon Defendants' fraudulent representations.

243.    Further, Defendants' conduct was outrageous, wanton, and malicious, imbued with an evil motive and violence, and was performed with a reckless indifference to the interests of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages for Defendants' fraudulent Connecticut Representations.


NINTH CLAIM FOR RELIEF
FALSE IMPRISONMENT
(*Defendants Pro Tree, William Forero, Hernando Aranda*)

244.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 243 of this complaint as if fully set forth herein.

245.    Plaintiff Carlos Aguilar alleges this claim against Defendants Pro Tree, William Forero, and Hernando Aranda.

246.    To punish Plaintiff Carlos Aguilar for complaining about working conditions, Defendants Forero and Aranda confined him to Plaintiffs' apartment against his will for the period of one day.

247.    Plaintiff Aguilar did not consent to this restraint.   Rather, Plaintiff Aguilar's liberty was restrained by Defendants' coercive threats that Plaintiff Aguilar would lose his employment and would be deported should he attempt to escape, and by the presence of Defendant Aranda, who kept watch outside the apartment during that day.

248.    Further, Defendants' conduct was outrageous, wanton, and malicious, imbued with an evil motive and violence, and was performed with a reckless indifference to the interests of the Plaintiff.  Accordingly, Plaintiff Carlos Aguilar is entitled to punitive damages for Defendants' false imprisonment.

249.    Plaintiff Aguilar is entitled to monetary damages for both compensatory and
punitive damages in an amount to be determined at trial.

TENTH CLAIM FOR RELIEF
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(*Defendants Pro Tree, William Forero, Hernando Aranda*)

250.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through
249 of this complaint as if fully set forth herein.

251.    Plaintiffs bring this claim against Defendants Pro Tree, William Forero, and
Hernando Aranda.

252.    Defendants intentionally engaged in extreme and outrageous conduct that they
knew or should have known would cause severe emotional distress for the Plaintiffs.

253.    Defendants' conduct which intentionally inflicted emotional distress included, but
is not limited to, the use of physical and mental coercion to force Plaintiffs to perform
manual labor; the manipulation of the legal process to force continued labor; the
nonconsensual transportation of Plaintiffs to Connecticut; the withholding of legal
documents; the refusal to provide prompt medical treatment when needed; the refusal to
pay contractually defined wages; the refusal to allow Plaintiffs to travel outside the
Hartford area; the enforced isolation of Plaintiffs from communication with family
members; the failure to identify and remedy workplace violations of federal and state
laws; and a consistent manipulation of foreign workers unfamiliar with both the language
and legal process of the United States.

254.    Plaintiffs suffered severe emotional distress that included emotional reactions
such as fear, shame, humiliation, embarrassment, anger, disappointment, worry,

helplessness, powerlessness, and nausea.  This distress was directly caused by Defendants' intentional acts.

255.    Further, Defendants intentionally engaged in conduct that was outrageous, wanton, and malicious, imbued with an evil motive and violence, and performed with a reckless indifference to the interests of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages for Defendants' intentional infliction of emotional distress.

256.    Plaintiffs are entitled to monetary relief for both compensatory and punitive damages in an amount to be determined at trial.


ELEVENTH CLAIM FOR RELIEF
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(*Defendants Griffin Land, Imperial Nurseries, Gregory Schaan, Jim Wells,
Pro Tree, William Forero, Hernando Aranda*)

257.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 256 of this complaint as if fully set forth herein.

258.    Plaintiffs bring this claim against Defendants Griffin Land, Imperial Nurseries, Gregory Schaan, Jim Wells, Pro Tree, William Forero, and Hernando Aranda.

259.    Defendants had a duty of reasonable care to Plaintiffs, and they breached this duty by acting negligently and failing to exercise reasonable care.

260.    Defendants negligently engaged in extreme and outrageous conduct that they knew or should have known involved an unreasonable risk of causing severe emotional distress to the Plaintiffs.

261.    Defendants' conduct which negligently inflicted emotional distress included, but is not limited to, the use of physical and mental coercion to force Plaintiffs to perform manual labor; the manipulation of the legal process to force continued labor; the

nonconsensual transportation of Plaintiffs to Connecticut, the withholding of legal documents; the refusal to provide prompt medical treatment after workplace injuries; the refusal to pay contractually defined wages; the refusal to allow Plaintiffs from traveling outside the Hartford area, the enforced isolation of Plaintiffs from communication with family members; the failure to identify and remedy workplace violations of federal and state laws; the negligent hiring and supervision of agents and/or contractors; and a consistent manipulation of foreign workers unfamiliar with both the language and legal process of the United States.

262.    Plaintiffs suffered severe emotional distress that included emotional reactions such as fear, shame, humiliation, embarrassment, anger, disappointment, worry, helplessness, powerlessness, and nausea.

263.    Defendants' negligent acts were the proximate cause of the distress and injuries that Plaintiffs suffered.

264.    Plaintiffs acted at all times in a careful and prudent manner and in the exercise of due care and caution.

265.    Further, Defendants negligently engaged in conduct that was outrageous, wanton, and malicious, imbued with an evil motive and violence, and performed with a reckless indifference to the interests of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages for Defendants' negligent infliction of emotional distress.

266.    Plaintiffs are entitled to monetary relief for both compensatory and punitive damages in an amount to be determined at trial.

TWELFTH CLAIM FOR RELIEF
RECKLESS CONTRACTING & SUPERVISION
(*Defendants Griffin Land, Imperial Nurseries, Gregory Schaan, Jim Wells*)

267.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 266 of this complaint as if fully set forth herein.

268.    Defendants Griffin Land, Imperial Nurseries, Gregory Schaan, and Jim Wells entered contracts with and supervised Defendants Pro Tree, William Forero, and Hernando Aranda in a reckless manner that demonstrated wanton misconduct and disregard for the health, safety, and rights of Plaintiffs.

269.    Defendants witnessed conduct that included forced labor, human trafficking, denial of basic medical care, and false imprisonment.  This activity occurred on premises owned and operated by Defendants Griffin Land and Imperial Nurseries.

270.    Rather than reporting such conduct to appropriate authorities, Defendants profited from the continued labor and exploitation of the Plaintiffs.

271.    Defendants knew or should have known that labor contractors like Pro Tree on occasion employ such illegal and exploitative techniques with temporary foreign workers unaware of their rights under U.S. law.  Such exploitation and illegal activity was foreseeable to Defendants.

272.    Accordingly, Defendants had a duty to supervise Pro Tree, William Forero, and Hernando Aranda to ensure that they did not engage in exploitive labor practices.

273.    Defendants recklessly breached this duty by failing to adequately supervise Pro Tree, William Forero, and Hernando Aranda.

274.    Defendants' reckless acts were the proximate cause of the harm that Plaintiffs suffered.  Plaintiffs acted at all times in a careful and prudent manner and in the exercise of due care and caution.

275.    Defendants' breach of this duty resulted in significant personal harm to Plaintiffs which included forced labor, human trafficking, denial of medical case, and false imprisonment.

276.    Further, Defendants' conduct was outrageous, wanton, and malicious, imbued with an evil motive and violence, and was performed with a reckless indifference to the interests of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages for Defendants' reckless conduct.

277.    Plaintiffs are entitled to monetary relief for both compensatory and punitive damages in an amount to be determined at trial.


THIRTEENTH CLAIM FOR RELIEF
NEGLIGENT CONTRACTING & SUPERVISION
(*Defendants Griffin Land, Imperial Nurseries, Gregory Schaan, Jim Wells*)

278.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 277 of this complaint as if fully set forth herein.

279.    Defendants Griffin Land, Imperial Nurseries, Gregory Schaan, and Jim Wells entered contracts with and supervised Defendants Pro Tree, William Forero, and Hernando Aranda in a negligent manner that demonstrated misconduct and disregard for the health, safety, and rights of Plaintiffs.

280.    Defendants Griffin Land, Imperial Nurseries, Schaan, and Wells had a duty to supervise Pro Tree, William Forero, and Hernando Aranda to ensure that they did not engage in exploitive labor practices.

281.    Defendants negligently breached this duty by failing to adequately supervise its contractor, Pro Tree.

282.    Defendants' breach of this duty resulted in significant personal harm to Plaintiffs which included forced labor, human trafficking, denial of medical case, and false imprisonment.

283.    Defendants' negligent acts were the proximate cause of the harm that Plaintiffs suffered.

284.    Plaintiffs acted at all times in a careful and prudent manner and in the exercise of due care and caution.

285.    Plaintiffs are entitled to monetary relief for both compensatory and punitive damages in an amount to be determined at trial.


FOURTEENTH CLAIM FOR RELIEF
TRAFFICKING VICTIMS PROTECTION ACT ("TVPA")
Forced Labor, 18 U.S.C. § 1589
(*Defendants Pro Tree, William Forero, Hernando Aranda*)

286.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 285 of this complaint as if fully set forth herein.

287.    Plaintiffs bring this claim against Defendants Pro Tree, William Forero, and Hernando Aranda.

288.    This claim is brought under 18 U.S.C. § 1595 of the Trafficking Victims Protection Act.

289.    Defendants subjected Plaintiffs to forced labor in violation of 18 U.S.C. § 1589.

290.    Defendants subjected Plaintiffs to intense psychological and verbal abuse, which was designed to coerce Plaintiffs into believing that they would suffer serious harm if they were to leave the employ of Defendants in violation of 18 U.S.C. § 1589(2).

291.    Defendants closely controlled and monitored the movements of Plaintiffs in such a way that made Plaintiffs feel as if they were physically restrained from leaving the employ of Defendants in violation of 18 U.S.C. § 1589(2).

292.    Defendants threatened Plaintiffs with deportation by immigration officials and imprisonment by U.S. law enforcement agents, deceived Plaintiffs about the terms of their visas, and confiscated their passports in a manner that constituted an abuse of the legal process under 18 U.S.C. § 1589(3).

293.    Plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial and any other relief deemed appropriate.


FIFTEENTH CLAIM FOR RELIEF
TVPA
Human Trafficking, 18 U.S.C. § 1590
(*Defendants Pro Tree, William Forero, Hernando Aranda*)

294.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 293 of this complaint as if fully set forth herein.

295.    Plaintiffs bring this claim against Defendants Pro Tree, William Forero, and Hernando Aranda.

296.    This claim is brought under 18 U.S.C. § 1595 of the Trafficking Victims Protection Act.

297.    Defendants recruited and transported Plaintiffs for the purpose of subjecting them

to forced labor in violation of 18 U.S.C. § 1590.

298.    Defendants recruited Plaintiffs in Guatemala with the intention of subjecting them

to forced labor.  Plaintiffs were told that they would be planting pine trees in North

Carolina for $7.50 per hour.  Instead, upon arriving in North Carolina, they were

transported across state lines to Connecticut without their consent.

299.    Plaintiffs are entitled to compensatory and punitive damages in an amount to be

determined at trial and any other relief deemed appropriate.


SIXTEENTH CLAIM FOR RELIEF
ALIEN TORT CLAIMS ACT, 28 U.S.C. § 1350
Involuntary Servitude & Forced Labor
(*Defendants Pro Tree, William Forero, Hernando Aranda*)

300.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through

299 of this complaint as if fully set forth herein.

301.    Plaintiffs bring this claim against Defendants Pro Tree, William Forero, and

Hernando Aranda.

302.    This Court has jurisdiction over these violations of international law pursuant to

the Alien Tort Claims Act, 28 U.S.C. § 1350.

303.    Defendants subjected Plaintiffs to involuntary servitude and/or forced labor,

which are violations of the law of nations and customary international law as reflected,

expressed, and defined in multilateral treaties and other international instruments,

international and domestic judicial decisions, and other authorities.

304.    One international instrument defines forced labor as "all work or service which is

exacted from any person under the menace of any penalty and for which the said person

has not offered himself voluntarily."  Convention Concerning Forced or Compulsory Labor art. 2, May 1, 1932, 39 U.N.T.S. 55.

305.    The above-named Defendants engaged in acts including, but not limited to, the manipulation of legal documents, psychological coercion, threats of the abuse of the legal process, and threats of physical force to exact from Plaintiffs work or service which the Plaintiffs had not offered voluntarily.

306.    Aiding and abetting involuntary servitude and/or forced labor is also in violation of the law of nations and treaties of the United States and is actionable through the Alien Tort Claims Act, 28 U.S.C. § 1350.

307.    Defendants aided and abetted the imposition of involuntary servitude and/or forced labor by directing, ordering, conspiring to commit, or aiding the imposition of involuntary servitude and/or forced labor.

308.    Plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial and any other relief deemed appropriate.


SEVENTEENTH CLAIM FOR RELIEF
ALIEN TORT CLAIMS ACT, 28 U.S.C. § 1350
Human Trafficking
(*Defendants Pro Tree, William Forero, Hernando Aranda*)

309.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 308 of this complaint as if fully set forth herein.

310.    Plaintiffs bring this claim against Defendants Pro Tree, William Forero, and Hernando Aranda.

311.    This Court has jurisdiction over this violation of international law pursuant to the Alien Tort Claims Act, 28 U.S.C. § 1350.

312.    Defendants engaged in human trafficking, which is a violation of the law of nations and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

313.    The U.N. Protocol to Prevent, Suppress, and Punish Trafficking in Persons, of which the United States became a signatory in 2000, defines human trafficking as:

> [T]he recruitment, transportation, transfer, harbouring or receipt of persons, by means of the threat or use of force or other forms of coercion, of abduction, of fraud, of deception, of the abuse of power or of a position of vulnerability or of the giving or receiving of payments or benefits to achieve the consent of a person having control over another person, for the purpose of exploitation.

Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children, Supplementing the United Nations Convention Against Transnational Crime art. 1, Nov. 15, 2003, 55 U.N. GAOR Supp. (No. 49) at 60, U.N. Doc. A/45/49 (Vol. I) (2001), 40 I.L.M. 335.

314.    Defendants engaged in acts including, but not limited to, the recruitment, transportation, transfer, harboring, or receipt of Plaintiffs.  These acts were conducted through the use of force, the threat of force, abduction, fraud, deception, the abuse of power, and/or a position of vulnerability.

315.    Defendants trafficked Plaintiffs for the purposes of obtaining forced labor or services.

316.    Aiding and abetting human trafficking is also a violation of the law of nations and treaties of the United States and is actionable through the Alien Tort Claims Act, 28 U.S.C. § 1350.

317.    Defendants aided and abetted human trafficking by directing, ordering, conspiring to commit, or aiding human trafficking.

318.    Plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial and any other relief deemed appropriate.

EIGHTEENTH CLAIM FOR RELIEF
FEDERAL RACKETEERING INFLUENCED
CORRUPT ORGANIZATIONS ACT ("RICO")
(*Defendants Imperial, and Pro Tree as the Enterprise*)

319.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 318 of this complaint as if fully set forth herein.

320.    This claim is brought by Plaintiffs against Defendants Anthony Galici of Griffin Land and Imperial Nurseries, Gregory Schaan and Jim Wells of Imperial Nurseries, and William Forero and Hernando Aranda of Pro Tree ("RICO I Defendants").

321.    Imperial Nurseries and Pro Tree have a long-lasting and continuing relationship and represent an association-in-fact, and therefore an enterprise, for the purposes of 18 U.S.C. § 1961(4).

322.    Upon information and belief, Imperial Nurseries have contracted with other labor contractors or recruiters in addition to Pro Tree over the course of multiple years; these long-lasting and continuing relationships also represent an association-in-fact, and therefore an enterprise, for the purposes of 18 U.S.C. § 1961(4).

323.    Upon information and belief, Pro Tree has contracted with other farms, nurseries, timber companies, and other employers of temporary foreign workers in addition to Imperial Nurseries over the course of multiple years; these long-lasting and continuing

relationships also represent an association-in-fact, and therefore an enterprise, for the purposes of 18 U.S.C. § 1961(4).

324.    RICO I Defendants organized, conspired, and participated in a criminal worker exploitation scheme designed fraudulently to obtain government approval to employ H-2B workers in order to subject the workers to forced labor and exploit them for personal profit.

325.    In furtherance of this criminal worker exploitation scheme, Defendants Forero and Aranda unlawfully conducted the affairs of an enterprise, both directly and indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and § 1962(d).

326.    Defendants Forero and Aranda knowingly and willfully committed, and conspired to commit, the following predicate acts under RICO, 18 U.S.C. § 1961(1):

a.    subjected Plaintiffs to forced labor in violation of 18 U.S.C. § 1589(2)-(3);

b.    recruited and transported Plaintiffs for the purpose of subjecting them to forced labor in violation of 18 U.S.C. § 1590;

c.    fraudulently obtained H-2B visas by knowingly making false claims and statements about the nature and location of the work and the wage to be paid in violation of 18 U.S.C. § 1546;

d.    committed mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, by sending fraudulent visa applications to U.S. DOL and U.S. CIS; and

e.  robbed and/or extorted Plaintiffs of their property in violation of 18
U.S.C. § 1951.

327.   In furtherance of this criminal worker exploitation scheme, Defendants Galici,
Wells, and Schaan conspired unlawfully to conduct the affairs of an enterprise, both
directly and indirectly, through a pattern of racketeering activity in violation of 18 U.S.C.
§ 1962(d).

328.   Defendants Galici and Schaan knew or should have known that inherent to the
illegal scheme which they conspired to commit, the following predicate acts under 18
U.S.C. § 1961(1) would be committed:

a.  fraudulently obtained H-2B visas by knowingly making false claims
and statements about the nature and location of the work and the wage
to be paid in violation of 18 U.S.C. § 1546;

b.  committed mail and wire fraud in violation of 18 U.S.C. §§ 1341 and
1343, respectively, by sending fraudulent visa applications to U.S.
DOL and U.S. CIS; and

c.  robbed and/or extorted Plaintiffs of their property in violation of 18
U.S.C. § 1951.

329.   Defendant Wells knew or should have known that inherent to the illegal scheme
which he conspired to commit, the following predicate acts under 18 U.S.C. § 1961(1)
would be committed:

a.  subjected Plaintiffs to forced labor in violation of 18 U.S.C. § 1589(2)-
(3); and

b.   robbed and/or extorted Plaintiffs and their property in violation of 18

U.S.C. § 1951.

330.    Each RICO I Defendant – Forero, Aranda, Schaan, Galici, and Wells – possessed

knowledge of the general nature and contours of the criminal worker exploitation

scheme.

331.    Each RICO I Defendant possessed knowledge that the conspiracy extended

beyond their individual roles.

332.    Each RICO I Defendant conspired and agreed to further the criminal worker

exploitation scheme, which resulted in the commission of the predicate acts described

above.

333.    Each RICO I Defendant shared the same intent as their co-conspirators and had

reason to believe that the criminal worker exploitation scheme would lead to the

commission of the predicate acts described above.

334.    The predicate acts of racketeering activity described above constitute a "pattern of

racketeering activity" as defined in 18 U.S.C. § 1961(5).

335.    The predicate acts were related to one another: they were committed against the

same individuals (the Plaintiffs) and for the same purposes (furtherance of the criminal

worker exploitation scheme and personal profit).

336.    The predicate acts were related to the enterprise.  RICO I Defendants could not

successfully conduct or conspire to conduct the criminal worker exploitation scheme

without the associations that formed the enterprise.

337.    Upon information and belief, the racketeering activity took place over the course

of multiple years.

338.    Such acts of racketeering activity have been part of the RICO I Defendants'
regular way of doing business through the enterprise, which implies a threat of continued
criminal activity.

339.    Plaintiffs bring suit under 18 U.S.C. § 1964(c) to recover treble damages for
injuries sustained by Plaintiffs as a result of the RICO I Defendants' violation of 18
U.S.C. § 1962(c) and (d).


NINETEENTH CLAIM FOR RELIEF
RICO
(*Defendant Pro Tree as the Enterprise*)

340.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through
339 of this complaint as if fully set forth herein.

341.    This claim is brought by Plaintiffs against Defendants William Forero and
Hernando Aranda of Pro Tree ("RICO II Defendants").

342.    Pro Tree is a legal entity and an enterprise for the purposes of 18 U.S.C. §
1961(4).

343.    Upon information and belief, Pro Tree has contracted with other farms, nurseries,
timber companies, and other employers of temporary foreign workers in addition to
Imperial Nurseries over the course of multiple years; these long-lasting and continuing
relationships also represent an association-in-fact, and therefore an enterprise, for the
purposes of 18 U.S.C. § 1961(4).

344.    RICO II Defendants organized and participated in a criminal worker exploitation
scheme designed to fraudulently obtain approval to employ H-2B workers in order to
subject the workers to forced labor and exploit them for personal profit.

345.    In furtherance of this criminal worker exploitation scheme, RICO II Defendants unlawfully conducted the affairs of an enterprise, both directly and indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and § 1962(d).

346.    The RICO II Defendants knowingly and willfully committed, and conspired to commit, the following predicate offenses under RICO, 18 U.S.C. § 1961(1):

a.    subjected Plaintiffs to forced labor in violation of 18 U.S.C. § 1589(2)-(3);

b.    recruited and transported Plaintiffs for the purpose of subjecting them to forced labor in violation of 18 U.S.C. § 1590;

c.    fraudulently obtained H-2B visas by knowingly making false claims and statements about the nature and location of the work and the wage to be paid in violation of 18 U.S.C. § 1546;

d.    committed mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, by sending fraudulent visa applications to U.S. DOL and U.S. CIS; and

e.    robbed and/or extorted Plaintiffs and their property in violation of 18 U.S.C. § 1951.

347.    Defendants Forero and Aranda possessed knowledge of the general nature and contours of the criminal worker exploitation scheme.

348.    Defendants Forero and Aranda possessed knowledge that the conspiracy extended beyond their individual roles

349.    Defendants Forero and Aranda conspired and agreed to further the criminal worker exploitation scheme, which resulted in the commission of the predicate acts described above.

350.    Defendants Forero and Aranda shared the same intent as their co-conspirators and had reason to believe that the criminal worker exploitation scheme would lead to the commission of the predicate acts described above.

351.    The predicate acts of racketeering activity described above constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

352.    The predicate acts were related to one another: they were committed against the same individuals (the Plaintiffs) and for the same purposes (furtherance of the criminal worker exploitation scheme and personal profit).

353.    The predicate acts were related to the enterprise.  The RICO II Defendants could not successfully conduct the criminal worker exploitation scheme without the associations that formed the enterprises.

354.    Upon information and belief, the racketeering activity took place over the course of multiple years.

355.    Such acts of racketeering activity have been part of the RICO II Defendants' regular way of doing business through the enterprises, which implies a threat of continued criminal activity.

356.    Plaintiffs bring suit under 18 U.S.C. § 1964(c) to recover treble damages for injuries sustained by Plaintiffs as a result of the RICO II Defendants' violation of 18 U.S.C. § 1962(c) and § 1962(d).

## TWENTIETH CLAIM FOR RELIEF
### GUATEMALAN LABOR CODE
(*Defendants Griffin Land, Imperial Nurseries,*
*Pro Tree, William Forero, Hernando Aranda*)

357.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 356 of this complaint as if fully set forth herein.

358.     Plaintiffs hereby provide notice of their intent to raise an issue concerning the law of a foreign country pursuant to Rule 44.1 of the Federal Rules of Civil Procedure.

359.     Guatemalan law contains an extraterritorial statutory provision, Article 34 of the Guatemalan Labor Code ("Article 34"), which creates legal obligations for foreign employers who employ Guatemalan nationals recruited within Guatemala to perform work outside of Guatemala.

360.     Section (b) of Article 34 provides that, when a company or individual recruits a Guatemalan worker to perform labor or services outside of Guatemala, the recruiting company or the business to whom services are provided shall pay the costs of transportation from the worker's home to the place where the work will be performed. These costs include travel costs, customs fees, and any costs incurred in fulfilling the requirements of immigration, including the obtaining of a visa.

361.     Defendants Griffin Land, Imperial Nurseries, Pro Tree, William Forero, and Hernando Aranda, acting through their Guatemalan agent, recruited the Plaintiffs in or around Guatemala City in or around March and April of 2006.  Therefore, Defendants were obligated to fulfill the requirements of Article 34.

362.     Defendants failed to pay the relocation costs for the Plaintiffs, in violation of Article 34 of the Guatemalan Labor Code.

363.    Article 34 of the Guatemalan Labor Code also constitutes a "working arrangement" between Plaintiffs and Defendants which is enforceable through AWPA, 29 U.S.C. § 1822(c).

364.    Plaintiffs are entitled to money damages plus interest in an amount to be determined at trial, as well as injunctive and other equitable relief.


<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Court:

365.    Award Plaintiffs monetary damages for unpaid minimum wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as provided by the FLSA, 29 U.S.C. §216(b), in an amount to be determined at trial;

366.    Award Plaintiffs, for each violation of AWPA, the amount of his actual damages plus interest or up to $500 in statutory damages, as provided by the AWPA, 29 USC § 1854;

367.    Award Plaintiffs compensatory damages for fees and costs associated with visa applications and airfare to the United States;

368.    Award Plaintiffs twice the full amount of unpaid wages minus any amount actually paid by the employer, as provided by Conn. Gen. Stat. § 31-68 and § 31-72, in an amount to be determined at trial;

369.    Award Plaintiffs compensatory and punitive damages for Defendants' violations of Connecticut common law (including breach of contract, breach of contract implied through quantum meruit, fraud, intentional infliction of emotional distress, negligent

infliction of emotional distress; reckless contracting and supervision, and negligent

contracting and supervision);

370.    Award Plaintiff Carlos Aguilar compensatory and punitive damages for his false

imprisonment, in an amount to be determined at trial;

371.    Award Plaintiffs compensatory and punitive damages in an amount to be

determined at trial, as provided by 18 U.S.C. § 1589 (forced labor) and 18 U.S.C. § 1590

(trafficking);

372.    Award compensatory and punitive damages to Plaintiffs for violations of

international law under the Alien Tort Claims Act, 28 U.S.C. § 1350, in an amount to be

determined at trial;

373.    Award treble damages to Plaintiffs for violations of the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*., in an amount to be determined at

trial;

374.    Award compensatory damages plus interest to Plaintiffs in an amount to be

determined at trial, as well as injunctive and other equitable relief, as provided by Article

34 of the Guatemalan Labor Code;

375.    Award attorneys' fees and costs to Plaintiffs for legal services provided by the

Jerome N. Frank Legal Services Organization pursuant to 18 U.S.C § 1964(c) (RICO); 29

U.S.C. § 216(b) (FLSA); Conn. Gen. Stat. §§ 31-68(a) and 31-72 (Connecticut Wage and

Hour Law); and 18 U.S.C. § 1595 (TVPA); and

376.    Grant such additional and further relief as the Court deems just and proper.


Dated: March 14, 2007



_____/s/ Michael Wishnie___
Michael J. Wishnie, Supervising Attorney ct27221

_____/s/ Robert Solomon___
Robert Solomon, Supervising Attorney

Amanda Aikman, Law Student Intern
Katherine Desormeau, Law Student Intern
Nicole Hallett, Law Student Intern
Paul Hughes, Law Student Intern
Human Trafficking Litigation Project
Workers and Immigrants Rights Advocacy Clinic
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall St.
New Haven, CT 06511
(203) 432-4800

Mike Guare
Eric Nelson
Pine Tree Legal Assistance
Farm Worker Unit
61 Main Street, Room 41
Bangor, ME 04401
(800) 879-7463

Attorneys for Plaintiffs